IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDY EUGENE STOKES, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | No. 16 C 11298 |
| ) | |
| CITY OF CHICAGO, OFFICER ROBERTO ) | Hon. Judge Virginia M. Kendall |
| MALPICA, JR., OFFICER SULLIVAN, ) | |
| OFFICER DORALICIA ORTIZ, OFFICER ) | |
| HERMAN SALGADO, DETENTION AIDE ) | |
| WALTER CARDONA, DETENTION AIDE ) | |
| KENNETH KULBIDA, JOHN DOE 1, and ) | |
| JOHN DOE 2, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant City of Chicago ("the City") moves to dismiss Counts III and IV of Plaintiff Randy Eugene Stokes' ("Stokes") First Amended Complaint ("FAC") (Dkt. No. 23) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Dkt. No. 44.) Stokes' suit against the City alleges a *Monell* claim under the Civil Rights Act, 42 U.S.C. § 1983 (Count II), a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 to 12134 (Count III), and a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 704 (Count IV). (Dkt. No. 23.) Stokes also seeks relief against six named and two unnamed officers and detention aides for deliberate indifference under the Civil Rights Act, 42 U.S.C. § 1983. (*Id.*) The City seeks dismissal of Counts III and IV, in whole or in part, asserting the complaint fails to allege the failure to accommodate based on lack of medical treatment and medication, the decision not to place the Defendant in a readily observable cell, and that the City's or its agents' decisions were made because of the Defendant's disability. The motion to dismiss for failure to state a claim is denied. [44.]

1

**BACKGROUND**

The following facts are drawn from the first amended complaint and are accepted as true for the purpose of reviewing the motion to dismiss. *See Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1095 (7th Cir. 2015).

On October 22, 2015, Chicago police officers arrested Stokes and took him to the 10th District Station Male Lock-Up in Chicago, Illinois. (Dkt. No. 23, at ¶ 21.) Stokes, who takes Dilantin[1] to alleviate a serious seizure disorder from which he has suffered for years, informed the arresting officers of his seizure proclivity, so they transported him to Mount Sinai Hospital for an evaluation. (*Id.* ¶¶ 18, 22.) While in transport, Stokes had a seizure and, upon arrival to the hospital, the treating physician diagnosed him with an acute seizure episode and a seizure disorder. (*Id.* ¶ 22.) The hospital gave him an intravenous drip of Dilantin and sent him back to jail for processing and intake. (*Id.* ¶¶ 22, 23.)

Officers Doralicia Ortiz and John Does 1 and 2 processed Stokes back at the jail. (*Id.* ¶ 23.) During the intake process, he informed Ortiz, Doe 1, and Doe 2 of his seizures and requested placement in an observable cell so that on-duty officers could keep watch and reach him for treatment or protection from other inmates in the event that he suffered another episode. (*Id.*) Instead, the officers placed him in a cell with another inmate down the hall and out of view of the intake area. (*Id.* ¶ 24.)

Either the same day or early the next morning, Stokes suffered another seizure while in his cell. (*Id.* ¶ 25.) Upon regaining consciousness, Stokes' shorts and underpants were around his ankles and his face felt wet. (*Id.*) He called for help and spoke with three separate officers

---

[1] Dilantin is a brand name version of the drug phenytoin, which is an anticonvulsant used in the treatment of generalized tonic clonic and complex partial epilepsy. PHENYTOIN, Steadmans Medical Dictionary (28th ed.2006); see also website: http://www.dilantin.com/about-dilantin.

and a supervising officer about his seizure, also claiming that his cellmate had sexually assaulted him while he was unconscious. (*Id.* ¶ 26.) Officers again transported Stokes to the hospital where he reported the sexual assault and was treated for a seizure and the sexual assault. (*Id.* ¶¶ 26, 27.) Officer Herman Salgado, one of Stokes' transporting officers, received medication for Stokes to prevent him from contracting HIV. (*Id.*)

Back at the jail Stokes requested access to the HIV prevention medication, but Officers Roberto Malpica, Jr., John Sullivan, and Detention Aides Walter Cardona and Kenneth Kulbida refused to provide them. (*Id.* ¶ 28.) Later, Stokes observed blood in his stool, so he asked Malpica and Cardona to go back to the hospital for further treatment but they refused. (*Id.* ¶ 29.) As a result of the cell-placement, the denial of medication, and the refusal of medical care, Stokes claims he suffered severe physical, psychological, and emotional trauma. (*Id.*) The incident resulted in numerous medical follow-ups resulting in diagnoses of anxiety, depression, and post-traumatic stress disorder – all requiring additional medications to help him cope with these conditions. (*Id.* ¶ 30.)

## STANDARD OF REVIEW

Rule 12 (b)(6) requires dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pled allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true … state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id*. at 678. When the factual allegations are well-pled, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id*. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

The City's motion targets Counts III and IV, which are ADA and Rehabilitation Act claims. In order to succeed on an ADA claim, a Plaintiff is required to show he is a "qualified individual with a disability," that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected by such an entity, and that the denial or discrimination was "by reason of" his disability. *See* 42 U.S.C. § 12132; *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). The elements are essentially the same under the Act but with an added requirement – the Plaintiff must show the "program or activity" in question receives federal funding. *See* 29 U.S.C. § 794; *Crawford v. Indiana Dept. of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997). The City is not challenging the added element of the Act, nor are they challenging whether the Plaintiff is disabled. (Dkt. Nos. 44, at 4; 48, at 4.) Therefore, the sufficiency of the Plaintiff's FAC on those elements of the ADA and the Act are not addressed. Instead, the City argues that the Plaintiff failed to sufficiently plead facts showing that he was not reasonably accommodated or that the City denied him or discriminated against him because of his disability. (Dkt. No. 44, at 5-9.)

## I. The Denial of Benefits

The City spends over a third of its motion arguing that the Plaintiff received appropriate accommodation as a result of City officers taking him to the hospital for treatment and medication. (*Id*. at 5-6.) Furthermore, the City's reply asserts that the issue is moot based on the Plaintiff's response to the motion to dismiss. (Dkt. No. 58, at 2.) In his First Amended Complaint, Stokes alleges only that he was not placed in a readily observable cell as the basis of his ADA and Rehabilitation Act claims.

In seeking dismissal, the City's response to these claims is that the officers' actions constituted the denial of a request for special treatment and not a denial of a reasonable accommodation. (Dkt. No. 44, at 6-7.) The City's reliance for this proposition on *Bryant v. Madigan* is misguided. 84 F.3d 246, 249 (7th Cir. 1996) (the ADA does not protect prisoners who fail to receive special treatment disguised as a claim for medical malpractice). The Plaintiff in this case is not attempting to use the ADA as a means of proving medical malpractice. Rather, his claims are based on the fact that the officers were aware of his disability, that he requested accommodation based on his disability and, as a result of their unwillingness to do so, he suffered injuries. (Dkt. Nos. 23, ¶¶ 23, 53, 63; 58, at 8, 11.) Where the City or its employees have a person in custody who is disabled, and they are aware of that disability, there is a "duty to reasonably accommodate the arrestee's disability. *See Paine ex re. Eilman v. Johnson*, 2010 WL 785397, *8 (N.D. Ill. Feb. 26, 2010); *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The City seeks to distinguish *Paine* factually in that, "[the] Plaintiff here was evaluated and . . . was treated for his claimed disability," as opposed to the plaintiff in *Paine* who was not evaluated before her release from custody, which resulted in her subsequent injury. *See* Dkt. No. 44, at 8 (emphasis removed). All of the facts and circumstances of the placement are necessary to determine the reasonableness of the accommodation and isolated actions showing proof of

5

accommodation are not enough to warrant dismissal. "Reasonable accommodation under the ADA is a process, not a one-off event." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013) (overruled on other grounds by *Ortiz v. Werner Eners.*, 834 F.3d 760 (7th Cir. 2016).

## II. Denial or Discrimination Based Upon Disability

The City also claims that Stokes failed to allege facts that he was denied a benefit or accommodation by reason of his disability, and that the allegations are not claims for medical care. (Dkt. No. 44, at 8-9.) Stokes alleges that he informed the officers at the jail that he had a seizure disorder and that he needed medication for this disorder, that he specifically requested that he be placed in an observable cell where he could be observed in case he had a seizure so that he could be protected from other inmates and so that he could be treated, that he had a seizure and was sexually assaulted while unconscious from that seizure, and that he was physically injured as a result. He alleges that the officers refused to send him for treatment after he informed them that there was blood in his stool from the attack. Assuming the facts in the First Amended Complaint as true, the City was put on notice of the Plaintiff's disability, and the Plaintiff requested a specific remedy in light of the potential consequences of that disability. "[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999); *see also Paine*, 2010 WL 785397, at *3-4 (the failure to provide a reasonable accommodation is covered in the meaning of discrimination for the purpose of ADA claims).

## CONCLUSION

Based on the foregoing reasons, the Court denies the City's motion to dismiss Counts III and IV of Plaintiff's First Amended Complaint, which pertain to violations of the Americans with Disabilities Act and the Rehabilitation Act.

January 22, 2018

_____
Hon, Virginia M. Kendall
United States District Judge